IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| ANTHONY GOODWIN, | ) |
| #26208-009, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 17-cv-0644-NJR |
| | ) |
| S. KALLIS, | ) |
| | ) |
| Respondent. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Petitioner Anthony Goodwin, an inmate in the Bureau of Prisons, filed a Petition for writ of habeas corpus under 28 U.S.C. § 2241. (Doc. 1). Goodwin is currently incarcerated at FCI-Pekin, Illinois, serving a 120-month sentence after pleading guilty to aiding and abetting possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.[1] *United States v. Goodwin*, 10-cr-0270-BSM, Doc. 246 (E.D. Ark. Oct. 28, 2011). Goodwin's sentencing range under the United States Sentencing Guidelines ("U.S.S.G.") was enhanced after the sentencing judge determined that he was a career offender pursuant to U.S.S.G. § 4B1.1, based in part on his four Arkansas residential burglary convictions. (Doc. 1, pp. 18–22).

---

[1] Goodwin was housed at the United States Penitentiary at Marion, Illinois, at the time his Petition was filed (Doc. 1), but was transferred to FCI-Pekin during the pendency of this action. (Doc. 19). Because Goodwin was detained within this District at the time he filed his Petition, this Court retains jurisdiction to resolve this matter even after Goodwin's transfer to FCI-Pekin. *See Rumsfeld v. Padilla*, 542 U.S. 426, 440-41 (2004) ("[W]hen the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release."). The Court's jurisdiction is "in no way impaired or defeated by the removal of the prisoner from the territorial jurisdiction of the District Court." *Id*. at 441 n. 14; *see also United States ex rel Circella v. Sahli*, 216 F.2d 33, 37 (7th Cir. 1954).

1

Goodwin now invokes *Mathis v. United States*, – U.S. –, 136 S. Ct. 2243 (2016), to challenge his sentence and argue that he is entitled to be resentenced without this Guidelines enhancement. Specifically, Goodwin argues that because the Arkansas residential burglary statutes under which he was convicted criminalize broader behavior than the generic federal definition of "burglary," these convictions were improperly considered to be crimes of violence under the Guidelines and can no longer support his enhanced sentence under *Mathis*. (Doc. 1, pp. 11–15).

Respondent opposes issuance of the writ on multiple grounds. Respondent argues that Goodwin cannot satisfy the requirements of Section 2255(e)'s savings clause because his sentence fell within the statutory maximum penalty for his crime of conviction notwithstanding his Guidelines enhancement, so his alleged harm is not a "miscarriage of justice" as required by Seventh Circuit precedent. (Doc. 10, pp. 23–31). Respondent also argues that Goodwin procedurally defaulted on his claim by failing to raise it on direct appeal. (*Id*. at pp. 19–23). Finally, Respondent argues that even if the Court reaches the merits of Goodwin's Petition, his Petition must fail because Goodwin's prior Arkansas residential burglary convictions were properly considered predicate crimes of violence as defined by U.S.S.G. § 4B1.2(a)(2) (2011). (*Id*. at pp. 23–31).

## RELEVANT FACTS AND PROCEDURAL HISTORY

On June 24, 2011, Goodwin pleaded guilty to one count of aiding and abetting possession with intent to distribute less than 50 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and 18 U.S.C. § 2. *United States v. Goodwin*, No. 10-cr-0270-BSM, Doc. 160, p. 1 (E.D. Ark. Jan. 6, 2014). Goodwin entered into a formal Plea Agreement, but this Agreement did not stipulate, discuss, or contemplate in any way Goodwin's criminal history,

2

criminal history category under the Guidelines, or his potential Guidelines sentencing range. *Id*. at pp. 1–12.

Goodwin's crime of conviction carried a statutory maximum penalty of 20 years' (240 months') imprisonment. 21 U.S.C. § 841(b)(1)(C) (2010). While neither party has provided the complete Presentence Report ("PSR") from Goodwin's underlying criminal case to the Court, there is no dispute that Goodwin was determined to be a career offender due to his prior Arkansas residential burglary convictions, which were determined to be qualifying "crimes of violence" by the sentencing court. (*See* Doc. 1, pp. 17–22; Doc. 10, pp. 3–4); *see also Goodwin*, No. 10-cr-0270-BSM, Doc. 384, pp. 17–18 (E.D. Ark. Oct. 2, 2017). Neither Goodwin nor his counsel objected to his designation as a career offender after the PSR was released, and Goodwin specifically did not object to any of the PSR's findings at his sentencing hearing. *Goodwin*, No. 10-cr-0270-BSM, Doc. 384, p. 7 (E.D. Ark. Oct. 2, 2017).

Goodwin asserts that before the career-offender enhancement, his Sentencing Guidelines range would have been significantly lower than the range resulting from his career offender status. At Goodwin's sentencing hearing, his counsel argued for a 48–72 month range of imprisonment. (Doc. 1, p. 11); *Goodwin*, No. 10-cr-0270-BSM, Doc. 384, p. 13 (E.D. Ark. Oct. 2, 2017). As a result of the enhancement, however, Goodwin's advisory range was 210–262 months, limited by statute to 240 months. *Goodwin*, No. 10-cr-0270-BSM, Doc. 384, p. 9 (E.D. Ark. Oct. 2, 2017). The sentencing court varied significantly downwards from the advisory range and ultimately sentenced Goodwin to 120 months' imprisonment. *Goodwin*, No. 10-cr-0270-BSM, Doc. 384, p. 21 (E.D. Ark. Oct. 2, 2017).

Goodwin did not file a direct appeal. Since being sentenced, he has filed two motions under 28 U.S.C. § 2255. In the first motion, filed in May 2012, Goodwin argued that his counsel was

ineffective at his sentencing hearing. This motion was denied on the merits by the sentencing court. *Id.* at Doc. 279, pp. 1–5 (E.D. Ark. Nov. 6, 2012). Goodwin's second Section 2255 motion, filed in June 2016, made similar arguments to those before the Court here, relying on *Johnson v. United States*, 576 U.S. –, 135 S. Ct. 2551 (2015), and *Taylor v. United States*, 495 U.S. 575 (1990). *Id.* at Doc. 373. This motion was denied because Goodwin failed to apply for and obtain leave from the Eighth Circuit to file a second or successive Section 2255 motion. *Id.* at Doc. 381. Goodwin did not appeal the denial of either of his Section 2255 motions.

## APPLICABLE LEGAL STANDARDS

Generally, petitions for writ of habeas corpus under 28 U.S.C. § 2241 may not be used to raise claims of legal error in conviction or sentencing, but are instead limited to challenges regarding the execution of a sentence. *See Valona v. United States*, 138 F.3d 693, 694 (7th Cir. 1998).

Aside from the direct appeal process, a prisoner who has been convicted in federal court is generally limited to challenging his conviction and sentence by bringing a motion pursuant to 28 U.S.C. § 2255 in the court which sentenced him. A Section 2255 motion is ordinarily the "exclusive means for a federal prisoner to attack his conviction." *Kramer v. Olson*, 347 F.3d 214, 217 (7th Cir. 2003). And, a prisoner is generally limited to only *one* challenge of his conviction and sentence under Section 2255. A prisoner may not file a "second or successive" Section 2255 motion unless a panel of the appropriate court of appeals certifies that such motion contains either (1) newly discovered evidence "sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense," or (2) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h).

4

It is possible, however, under very limited circumstances, for a prisoner to challenge his federal conviction or sentence under Section 2241. 28 U.S.C. § 2255(e) contains a "savings clause" which authorizes a federal prisoner to file a Section 2241 petition where the remedy under Section 2255 is "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). *See United States v. Prevatte*, 300 F.3d 792, 798–99 (7th Cir. 2002). The Seventh Circuit construed the savings clause in *In re Davenport*, 147 F.3d 605, 611 (7th Cir. 1998): "A procedure for postconviction relief can be fairly termed inadequate when it is so configured as to deny a convicted defendant *any* opportunity for judicial rectification of so fundamental a defect in his conviction as having been imprisoned for a nonexistent offense."

The Seventh Circuit has explained that, in order to fit within the savings clause following *Davenport,* a petitioner must meet three conditions. First, he must show that he relies on a new statutory interpretation case rather than a constitutional case. Secondly, he must show that he relies on a decision that he could not have invoked in his first Section 2255 motion *and* that case must apply retroactively. Lastly, he must demonstrate that there has been a "fundamental defect" in his conviction or sentence that is grave enough to be deemed a miscarriage of justice. *Brown v. Caraway*, 719 F.3d 583, 586 (7th Cir. 2013). *See also Brown v. Rios*, 696 F.3d 638, 640 (7th Cir. 2012).

Since *Davenport*, the Seventh Circuit has made it clear that "there must be some kind of structural problem with [S]ection 2255 before [S]ection 2241 becomes available. In other words, something more than a lack of success with a [S]ection 2255 motion must exist before the savings clause is satisfied." *See Webster v. Daniels*, 784 F.3d 1123, 1136 (7th Cir. 2015).

## ANALYSIS

In light of *Mathis*, Goodwin argues his Guidelines sentencing range was improperly

5

enhanced because the statutes of his prior Arkansas residential burglary convictions criminalize broader behavior than the Guidelines' definition of "crime of violence." (Doc. 1, pp. 11–15). Before reaching the merits of this argument, the Court must first consider whether Goodwin's claim can be brought within the narrow scope of Section 2255's savings clause. The Court agrees with Respondent that Goodwin cannot demonstrate the existence of a fundamental defect in his conviction or sentence that is grave enough to be deemed a miscarriage of justice, and thus he cannot satisfy the requirements of Section 2255(e)'s savings clause to bring his *Mathis* claim in a Section 2241 petition.

Some errors can be raised on direct appeal but not in a collateral attack by a Section 2255 motion or a Section 2241 petition. A claim that a defendant's Guidelines sentencing range was erroneously calculated is one such claim. *Hawkins v. United States*, 706 F.3d 820 (7th Cir. 2013), *supplemented on denial of rehearing*, 724 F.3d 915 (7th Cir. 2013); *see also United States v. Coleman*, 763 F.3d 706, 708–09 (7th Cir. 2014) ("[W]e held in *Hawkins* that the error in calculating the Guidelines range did not constitute a miscarriage of justice for Section 2255 purposes given the advisory nature of the Guidelines and the district court's determination that the sentence was appropriate and that it did not exceed the statutory maximum.").

The Sentencing Guidelines have been advisory since the Supreme Court decided *United States v. Booker*, 543 U.S. 220 (2005). *Perry v. United States*, 877 F.3d 751, 754 (7th Cir. 2017). The Guidelines enhancement and sentencing range that applied to Goodwin was advisory, not mandatory, because he was sentenced in 2011, well after the *Booker* decision. *United States v. Goodwin*, 10-cr-0270-BSM, Doc. 246 (E.D. Ark. Oct. 28, 2011). The applicable statutory sentencing range for Goodwin's drug trafficking conviction at the time of his sentencing was up to 20 years' (240 months') imprisonment pursuant to 21 U.S.C. § 841(b)(1)(C) (2010). Goodwin's

120-month sentence for his drug offense is well below the statutory maximum sentence for his conviction. Further, the fact that the sentencing judge imposed a sentence below the 210-month low point of his Guidelines range itself shows that the judge properly considered the Guidelines to be advisory, not mandatory.

Goodwin argues that he could not have brought his claim within a year of his final conviction in 2011 because the argument he raises was foreclosed to him until after *Mathis* was decided in 2016. Even assuming, *arguendo*, that the first and second *Davenport* criteria have been met,[2] *Hawkins* dictates that an erroneous application of the advisory guidelines does not amount to a "miscarriage of justice" (the third *Davenport* factor) so long as the sentence is within the applicable statutory limit. Therefore, Goodwin's Petition does not meet the criteria to bring his claim within Section 2255(e)'s savings clause.

In short, there is no meaningful way to distinguish *Hawkins* from this case. The issue in *Hawkins* was the same as the issue raised here by Goodwin: the use of prior convictions that would allegedly no longer qualify as a predicates for a Guidelines enhancement under current law. In its supplemental opinion on denial of rehearing in *Hawkins*, the Seventh Circuit summarized its holding: "an error in calculating a defendant's guidelines sentencing range does not justify postconviction relief unless the defendant had . . . been sentenced in the pre-*Booker* era, when the guidelines were mandatory rather than merely advisory." *Hawkins*, 724 F.3d at 916 (internal citations omitted). *Hawkins* remains binding precedent in this Circuit, and Goodwin's Petition must be dismissed for that reason.

---

[2] Because *Hawkins* dictates that Goodwin cannot possibly satisfy *Davenport*'s "miscarriage of justice" factor, which is dispositive of his Petition, the Court need not decide whether Goodwin has satisfied the other two *Davenport* factors. Likewise, the Court need not reach the merits of Respondent's argument that Goodwin procedurally defaulted on his *Mathis* claim by failing to raise that issue on direct appeal. (Doc. 10, pp. 19–23).

Even if *Hawkins* were not dispositive here, Goodwin's attempt to invalidate his career offender designation using *Mathis* fails on the merits.[3] *Mathis* applied Supreme Court precedent that began with *Taylor v. United States*, 495 U.S. 575 (1990), directing courts to use the "categorical approach," looking not to the *facts* of the prior crime but to the statutory *elements* of the prior conviction, when determining whether a prior crime counts as a predicate crime of violence for purposes of an ACCA sentencing enhancement. *Mathis*, 136 S. Ct. at 2248. A prior crime qualifies as a predicate only "if its elements are the same as, or narrower than, those of the generic offense." *Mathis*, 136 S. Ct. at 2247. *Mathis* clarified that only if a statute is "divisible" into different elements, each defining a distinct crime, may the court use the "modified categorical approach" to examine a limited set of state court documents to determine under which element the predicate crime occurred. *Mathis*, 136 S. Ct. at 2248; *see also Van Cannon v. United States*, 890 F.3d 656, 663 (7th Cir. 2018).

The statutes of Goodwin's prior Arkansas residential burglary convictions provided that "[a] person commits residential burglary if he or she enters or remains unlawfully in a residential occupiable structure of another person with the purpose of committing in the residential occupiable structure any offense punishable by imprisonment[,]" and defined residential occupiable structure as "a vehicle, building, or other structure: (i) in which any person lives; or (ii) [t]hat is customarily used for overnight accommodation of a person whether or not a person is actually present." ARK. CODE ANN. § 5-39-201(a) (West 1993); ARK. CODE ANN. § 5-39-101 (West 1993). According to Goodwin, these statutes are not a categorical match to the Supreme Court's definition of "generic

---

[3] Although *Mathis* was decided in the context of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. 924(e), the Seventh Circuit interprets the career offender provisions of the Guidelines in the same way due to the substantially similar language used by both. *See, e.g., United States v. Templeton*, 543 F.3d 378, 380 (7th Cir. 2008) (citing *United States v. Upton*, 512 F.3d 394, 404 (7th Cir. 2008) and *United States v. Howze*, 343 F.3d 919, 924 (7th Cir. 2003)); *see also United States v. Lynn*, 851 F.3d 786, 795 n.17 (7th Cir. 2017) ("We have held that the Court's jurisprudence with respect to . . . 18 U.S.C. § 924(e) applies with equal force to our interpretation of the 'closely analogous' career offender guideline.").

burglary" because, unlike generic burglary, they criminalize the unlawful entry and remaining in vehicles in addition to structures. (Doc. 1, pp. 11–15).

But Goodwin's argument does not take into account Supreme Court precedent decided after *Mathis*. In *United States v. Stitt*, 139 S. Ct. 399 (2017), a unanimous court held that generic burglary "includes burglary of a structure **or vehicle** that has been adapted or is customarily used for overnight accommodation." 139 S. Ct. at 403–04 (emphasis added). The Eighth Circuit Court of Appeals also recently issued its ruling on remand from *Stitt*, addressing the issue of whether this same Arkansas statute's definition of residential burglary (which includes burglary of "vehicle[s] . . . in which any person lives") brings the Arkansas statute outside the scope of generic burglary. The Eighth Circuit held that ARK. CODE ANN. §§ 5-39-101 and 5-39-201(a) does indeed categorically match the generic definition of burglary set forth in *Stitt*. *United States v. Sims*, – F.3d –, No. 16-1233, 2019 WL 3789294 (8th Cir. Aug. 13, 2019).

Applying *Stitt*'s analysis, the Eighth Circuit held that because the Arkansas statute "applies only to vehicles in which someone lives or that are customarily used for overnight accommodation," it addressed precisely the same risk of violence that led to the inclusion of burglary in the ACCA's enumerated clause. *Sims*, 2019 WL 3789294, at *3–4. The *Sims* panel also noted the fact that Arkansas separately criminalized unlawful entry into vehicles that were not specifically being used for residential purposes, *id*. at *3, in contrast to the Iowa burglary statute at issue in *Mathis* that criminalized the burglary of vehicles and structures in the same, indivisible statute. *Cf*. *Mathis*, 136 S. Ct. at 2250–51. Because *Stitt* clarified that the analysis focuses upon "circumstances where burglary is likely to present a serious risk of violence," "[a]n intrusion into a vehicle in which someone is living is necessarily 'an inherently dangerous crime'" which brings

9

Arkansas' statute, and others like it, into the ambit of the generic definition of burglary in the ACCA and the Guidelines.[4] *See Sims*, 2019 WL 3789294, at *3 (citing *Stitt*, 139 S. Ct. at 406–07).

Because ARK. CODE ANN. §§ 5-39-101 and 5-39-201(a) (West 1993) categorically match the Supreme Court's definition of generic burglary as set out in *Taylor*, *Mathis*, and *Stitt*, Goodwin was properly designated a career offender under the Guidelines based on his prior convictions under these statutes. Thus, even if *Hawkins* were not dispositive here, Goodwin's argument pursuant to *Mathis* fails on the merits.

## CONCLUSION

For the reasons set forth above, Goodwin's Petition for writ of habeas corpus under 28 U.S.C. § 2241 (Doc. 1) is **DENIED**. This action is **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

If Goodwin wishes to appeal the dismissal of this action, his notice of appeal must be filed with this Court within 60 days of the entry of judgment. FED. R. APP. P. 4(a)(1(A). A motion for leave to appeal *in forma pauperis* ("IFP") must set forth the issues Goodwin plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Goodwin does choose to appeal and is allowed to proceed IFP, he will be liable for a portion of the $505.00 appellate filing fee (the amount to be determined based on his prison trust fund account records for the past six months) irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725–26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858–59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 60-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of

---

[4] *See* n.3 above.

the judgment, and this 28-day deadline cannot be extended. Other motions, including a Rule 60 motion for relief from a final judgment, do not toll the deadline for an appeal.

It is not necessary for Goodwin to obtain a certificate of appealability from this disposition of his Section 2241 Petition. *Walker v. O'Brien*, 216 F.3d 626, 638 (7th Cir. 2000).

**IT IS SO ORDERED.**

**DATED: August 27, 2019**

								             _____
								             **NANCY J. ROSENSTENGEL**
								             **Chief U.S. District Judge**